UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PENSKE TRUCK LEASING CO., L.P., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-CV-4199 RLM-TAB |
| | ) | |
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

This case involves a dispute over Westfield Insurance Company's handling of claims arising out of a deadly motor vehicle accident. A semi-tractor owned by Penske Truck Leasing, leased to Green Transportation, and driven by Jeffrey Kolkman (a Green Transportation employee) collided with an automobile, killing Mr. Kolkman and the three occupants of the automobile, Brian Lee, Aaron Lee, and Stephanie Swaim. Penske is an insured under Green Transportation's policy with Westfield Insurance Company. Westfield denied coverage for claims asserted against Penske by the Estates of Brian Lee, Aaron Lee, and Stephanie Swaim. Penske brought this suit against Westfield for breach of contract, breach of the implied duty of good faith and fair dealing, and a declaration of its rights under the policy. The court grants Westfield's summary judgment motion.

## I. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, we accept the non-movant's evidence as true and draw all inferences in his favor. <u>Id</u>. at 255. The nonmoving party is not entitled to "[i]nferences that are supported by only speculation or conjecture." <u>Argyropoulos v. City of Alton</u>, 539 F.3d 724, 732 (7th Cir. 2008) (citation omitted). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead the nonmovant must present definite, competent evidence in rebuttal," <u>Parent v. Home Depot U.S.A., Inc.</u>, 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." <u>Hemsworth v. Quotesmith.com, Inc.</u>, 476 F.3d 487, 490 (7th Cir. 2007); <u>see also</u> Fed. R. Civ. P. 56(e)(2).

## II. Statement of Facts

On May 13, 2017, Jeffrey Kolkman, a Green Transportation employee, was driving a semi-tractor tailor that Green Transportation had leased from Penske,

when he failed to brake for stopped traffic on I-70 and collided with an automobile, killing himself and the automobile's three occupants, Brian Lee, Aaron Lee, and Stephanie Swaim.

Green Transportation was covered by a commercial policy of insurance with Westfield Insurance. As a condition of its lease agreement with Penske, Green Transportation had added Penske Truck Leasing as an additional insured. Penske contacted Westfield shortly after the accident to confirm it was covered under Green Transportation's policy, and Brad Klimek, the claims specialist who was handling claims arising out of the accident, told Penske that it was.

Westfield learned that a dash cam in the semi-tractor showed that Mr. Kolkman was looking at a computer tablet when the collision occurred. Westfield engaged in settlement negotiations with representatives for the Estates of Brian Lee, Aaron Lee, and  Stephanie Swaim in May and June 2017, and agreed to pay policy limits ($1 million)  to settle any wrongful death claims they might have had against Green Transportation and its driver, in exchange for releases of liability for Green Transportation and Mr. Kolkman. Westfield didn't notify Penske until 2019 of the settlements or that policy limits had been exhausted.

In April 2019, the Estates filed complaints against Penske asserting that the semi-tractor involved in the accident was defective because it didn't contain a collision warning device. Penske notified Westfield of the complaints on April 24,

2019 and asked it to defend and, if necessary, indemnify it under the terms of Green Transportation's insurance policy.

Mr. Klimek told Penske's representative on May 9, 2019 that the policy didn't cover product liability claims. Penske renewed its request, and the matter was referred to Westfield's attorney, Linda Vitone, who told Penske by letter dated July 18, 2019 that Westfield was denying coverage because the 2017 settlements had exhausted the policy limits and that its duty under the policy to defend and indemnify ended when the limits of liability were exhausted.

Penske filed this case three months later, alleging that Westfield breached the contract when it denied Penske's request to defend and indemnify (Count I), that it breached its implied duty to act in good faith and fair dealing (Count II), and that Penske is entitled to declaration of its rights under the policy (Count III).

## III. ANALYSIS

Westfield maintains that it's entitled to judgment as a matter of law on each of Penske's claims because:

- The contract expressly provides that: (a) Westfield has the right to settle any claims it considered appropriate, (b) the limits of liability for "bodily injury" claims arising out of the accident was $1 million per occurrence; and (c) its duty to defend and indemnify ends when policy limits are exhausted [Doc. No. 54-1 (Exh. 1) (Count I); and

4

- Penske can't show that Westfield breached its duty to act in good faith under Michigan or Indiana law (Count II); so

- Penske isn't entitled to the declaratory relief it seeks (Count 3).

Penske asserts that multiple issues of fact preclude the entry of summary judgment in this case, including:

- Whether Westfield breached its contract by refusing to defend Penske?[1]

- Whether Westfield waived, or is estopped from arguing, an exhaustion defense when it provided a different reason for denying coverage in May 2019?

- Whether Westfield breached the notice requirements in the lease agreement between Green Transportation and Penske, which were incorporated by reference in the policy, when it failed to give advance notice of the settlement negotiations?

- Whether Westfield breached the implied duty of good faith and fair dealing under Michigan and/or Indiana law?

---

[1] The parties agree that Michigan law applies to Penske's breach of contract claim because Michigan has the most intimate contacts with the contract of insurance. The parties have no such agreement as to the tort claim in Count II.

Case 1:19-cv-04199-RLM-TAB   Document 87   Filed 11/16/21   Page 6 of 17 PageID #: 1144


### A. Count I: Duty to Defend and Indemnify

Penske says its coverage is governed by the Additional Insured and Loss Payee Endorsements [Doc. No. 54-1 at 190-195], which modify the insurance provided under the Motor Carrier Coverage Form [Doc. No. 54-1 at 172-186]. It contends that those Endorsements are ambiguous because they don't state what the limits of liability were with respect to the lessor, so they must be interpreted in Penske's favor. *See* S. Macomb Disposal Auth. v. Am. Ins. Co., 572 N.W.2d 686, 697 (Mich. Ct. App. 1997); Michigan Basic Property Ins. Ass'n v. Wasarovich, 542 N.W.2d 367 (Mich. Ct. App. 1995). When the policy limits provision is viewed in its favor, Penske says, there is no limit of liability with respect to Lessors, so the policy limits weren't exhausted, and Westfield breached the policy's terms by refusing to defend and indemnify it. Penske seeks a declaratory judgment to that effect.

The policy provisions aren't ambiguous; Penske's suggestion that the parties must have intended lessors to have limitless coverage "strains the imagination." Est. of Swan v. Westfiled Ins. Co., No. 3:07-CV-69 JVB, 2009 WL 3200298, at *6 (N.D. Ind., Sep. 25, 2009). The Additional Insured Endorsements say nothing about the limits of liability coverage. They expressly provide that, "Information required to complete this Schedule, if not shown above, will be shown in the Declaration." [Doc. No. 54-1 at 190, 192, and 194].  The Motor Carrier Coverage Declaration states that the limit of liability for "Covered Auto Symbol 68" is

"$1,000,000 Each Accident". [Doc. No. 54-1 at 152], and the Motor Carrier Coverage Form describes "Symbol 68" as "'Autos' you lease, hire, rent, or borrow", in this case the semi-tractor Green Transportation leased from Penske. [Doc. No. 54-1 at 172-186].

The policy also contains a section entitled "Additional Insured–Lessor of Leased Equipment–Automatic Status When Required in Lease Agreement with Your":

> With respect to the insurance offered to these additional insureds, the following is added to Section III–Limits of Insurance:
> The most we will pay on behalf of the additional insured is the amount of insurance:
> > 1. Required by the contract or agreement you have entered into with the additional insured; or
> > 2. Available under the applicable Limits of Insurance shown in the Declaration
> whichever is less.
> This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

[Doc. No. 54-1 at 149].

The undisputed evidence shows that policy limits in this case were $1 million, that Westfield was expressly authorized to "settle any claims or 'suit' … [it] consider[ed] appropriate", and that its "duty to defend or settle end[ed] when the Liability Coverage Limit of Insurance ha[d] been exhausted by payment of judgments or settlements." [Doc. No. 54-1 at 180].

Penske argues that the notice provisions in the Vehicle Lease Service Agreement between Green Transportation and Penske were incorporated by

reference in Green's Commercial Insurance Policy, and required Westfield to provide advance notice of its intent to settle the Estates' claims against Green Transportation and Mr. Kolkman. The policy language doesn't support that argument. The policy makes a general reference to "the contract or agreement [Green Transportation] ha[d] entered into with the additional insured [Penske]" [Doc. No. 54-1 at 149], but that reference falls far short of the an intentional incorporation by reference. *See* Forge v. Smith, 580 N.W.2d 876 (Mich. 1998)("[T]he incorporating instrument must clearly evidence an intent that the writing be made part of the contract.").

Penske's waiver/estoppel argument fares no better. Penske contends that a genuine dispute exists as to whether Westfield waived, or should be estopped from arguing, an exhaustion defense, because it didn't deny coverage on that basis at first, citing, *e.g.*, Jones v. Jackson Nat'l Life Ins. Co., 27 F.3d 566 (6th Cir. 1994); Bartlett Investments, Inc. v. Certain Underwriters at Lloyd's London, 899 N.W.2d 761 (Mich. App. 2017); Cardinal Fabricating v. Cincinnati Ins. Co., 2020 WL 3399576 (Mich. App. 2020). But in each of those cases, the insurer changed its basis for denying coverage after the insured filed suit against it. That's not what Westfield did. Penske sent Westfield the complaints filed by the Estates on April 24, 2019 and asked Westfield to defend and indemnify it against those lawsuits. On May 9, Westfield responded to Penske and denied the request because the allegations in the complaints involved "products" claims. The same

day, Penske repeated its request and asked Westfield to reconsider. Westfield referred the matter to counsel for further review, and she determined that Westfield had no duty to defend or indemnify because the policy limits had been exhausted; she sent Penske a letter to that effect on July 18. Penske was aware of Westfield's stated reasons for denying coverage when it filed this suit in October 2019.

### B. Count II: Implied Duty of Good Faith

Count II of Penske's complaint alleges that Westfield tortiously breached its duties as an insurer. Westfield seeks summary judgment on the ground that either (a) Michigan law provides the rule of decision and doesn't allow an independent claim for bad faith, or (b) if Indiana law applies, Westfield's conduct didn't fall within Indiana's definition of actionable bad faith.

Penske responds that Indiana law governs under Indiana choice-of-law rules for tort cases, and that Indiana law applies a negligence standard (not a bad faith standard) in cases involving an insurer's tortious conduct toward its insured. Penske points to the deposition testimony of its expert witness, Charles Henderson, opining that Westfield's conduct fell below industry standards. Penske argues that fact issues preclude summary judgment for Westfield, even if the bad faith standard applied.

*1. Choice of Laws*

If potentially applicable substantive laws of two states actually conflict, a district court must apply the choice of law principles of the state in which the court sits. <u>Klaxon Company v. Stentor Electric Mfg. Co., Inc.</u>, 313 U.S. 487 (1941). Both sides agree on two propositions: first, that there is a conflict between Indiana and Michigan law with respect to claims such as Penske's Count II; and second, that the appropriate choice-of-law analysis is what Indiana applies in tort cases: courts apply the law of the state in which the tort occurred, unless that place bears little relationship to the case, in which event courts consider where the conduct causing the injury occurred, the parties' residences or places of business, and where the parties' relationship is centered. <u>Hubbard Mfg. Co. v. Greeson</u>, 515 N.E.2d 1071 (Ind. 1987).

Westfield is an Ohio corporation with its principal place of business in Indiana. Westfield issued an insurance contract to Green Transportation, which is based in Michigan. That contract provided coverage to Penske, a Delaware corporation with its principal place of business in Pennsylvania. The collision giving rise to liability under the contract occurred in Indiana. The lawsuits in which the personal representatives of those killed in the collision have sued Penske were filed in Indiana. Indiana residents were killed in the collision. The last event necessary to make Westfield liable on any variant of a bad faith theory occurred when Westfield decided to exhaust the policy limits in Indiana and then

decided in Indiana that it wouldn't defend or indemnify Penske in the Indiana lawsuits. Any financial loss that Penske might suffer will involve defending Indiana lawsuits and, potentially, paying Indiana judgments.

Indiana is the state in which the tort occurred, and Indiana can't be said to bear little relationship to this case. The court applied Michigan law to Count I of Penske's complaint, and Westfield says that should tilt the scales toward Michigan law on Count II. Westfield's cited cases don't support that proposition. In <u>Bristol West Ins. Co. v. West</u>, 406 F. Supp. 2d 771, 788-789 (W.D. Mich. 2005), the district court noted that similar factual considerations aligned the tort and contract choices of law, but didn't suggest that the outcome of one analysis influenced the other. In <u>Consolidated Rail Corp. V. Allied Corp.</u>, 692 F. Supp. 924, 928-929 (N.D. Ind. 1988), the discussion of other claims appears to have simply highlighted the correctness of the outcome of the <u>Hubbard Mfg.</u> analysis.

The law of Indiana provides the rule of decision for Count II of Penske's complaint.

### 2. Insurer's Tortious Bad Faith Dealing

In <u>Erie Ins. Co. v. Hickman by Smith</u>, 622 N.E.2d 515 (Ind. 1993), the Indiana Supreme Court held that an insurer owes its insured a duty of good faith and fair dealing, and that the insurer may be liable in tort for breaching that duty. The court explained the minimum reach of the duty:

11

> ... [R]ecognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate.
>
> We need not determine the precise extent of that duty today. However, we make these general observations. The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

622 N.E.2d at 519. The supreme court hasn't expanded that list of examples in the intervening 28 years, and expressly declined to expand the list in <u>Monroe Guar. Ins. Co. v. Magwerks Corp.</u>, 829 N.E.2d 968, 976 (Ind. 2005) ("Magwerks asserts that the duty to deal in good faith includes also the 'manner of handling the claim.' ... Magwerks does not elaborate on the contours of this duty. And because neither party provides us with much guidance on the issue, we decline at this time to expand on the extent of the duty an insurer owes its injured beyond those we have already expressed in Hickman.").

Penske argues that Indiana law recognizes a cause of action for an insurer's negligent lack of due care in performance. Penske cites <u>Anderson v. St. Paul Mercury Indem. Co.</u>, 340 F.2d 406 (7th Cir. 1965), in which the federal court of appeals, trying to predict in a diversity case what the Indiana Supreme Court would do, found no basis to think that Indiana wouldn't choose the same course as Illinois, and so was "a negligence as well as a bad faith state and not just a bad faith state." 340 F.2d at 409. The Indiana Court of Appeals cited <u>Anderson v. St. Paul</u> with approval, but ultimately held that the plaintiff had no standing to

pursue a negligence claim against another's insurer, in <u>Bennett v. Slater</u>, 289 N.E.2d 144 (Ind. Ct. App. 1972).

But those decisions didn't have the benefit of the <u>Erie Ins. Co. v. Hickman</u> decision. This court, through Judge Springmann, has concluded that the federal court of appeals' holding in <u>Anderson</u>, and the state court of appeals' favorable citation to <u>Anderson</u> in <u>Bennett,</u> don't accurately reflect the law as set forth in <u>Erie Ins. Co. v. Hickman</u>. <u>Travelers Indem. Co. v. Johnson</u>, 440 F. Supp. 3d 980 (N.D. Ind. 2020). Penske has provided no persuasive reason to think this court was wrong when it concluded that "an insurance provider, under Indiana law, does not breach the obligation of good faith and fair dealing that it owes to its insured when it merely acts negligently. <u>Travelers v. Johnson</u>, 440 F. Supp. 3d at 981-982.

Penske contends that the decision in <u>Travelers v. Johnson</u> is shown to be wrong by language in an Indiana Supreme Court decision of a decade earlier, <u>Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, PC</u>, 929 N.E.2d 722 (Ind. 2010). In that case, the supreme court considered a public library's claim for economic loss in a tort case. In resolving the case, the court found guidance in Professor Mark Gergen's draft of a revision of the *Restatement (Third) of Economic Torts and Related Wrongs* for the American Law Institute. Among the references to Professor Gergen's draft was this:

> Said differently, our default position in Indiana is that in general, there is no liability in tort for pure economic loss caused unintentionally.17 But Indiana courts should recognize that the rule is a general rule and be open to appropriate exceptions, such as (for

purposes of illustration only) lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement.18

Id. at 736. Footnote 18 said this:

The general rule of Gergen Restatement Draft § 12 provides: "[A person] is subject to liability in tort for pure economic loss resulting from the [person's] negligent performance of a contract in cases of: (a) professional malpractice; (b) breach of a duty of care owed to the claimant by an agent, fiduciary, bailee, or common carrier in supplying information or rendering a service; (c) breach of the duty to settle owed by a liability insurer to the insured; and (d) negligent misstatement."

Id. at 736 n.18.

These references breathe no life into <u>Anderson v. St. Paul Mercury,</u> 340 F.2d 406, or <u>Bennett v. Slater</u>, 289 N.E.2d 144. <u>Indianapolis-Marion County Library</u> addressed the limits of the economic loss doctrine; in the course of doing so, the court noted that the economic loss doctrine doesn't apply at all to some torts, including "breach of a duty to settle owed by a liability insurer to the insured", a tort not involved in the <u>Indianapolis-Marion County Library</u> case. It appears that the supreme court paraphrased Professor Gergen's draft to remind readers that the economic loss doctrine has exceptions - including cases alleging a breach of duty to settle. Penske's argument might be based on the proposition that the court spoke of "breach of the duty to settle" rather than "bad faith breach of the duty to settle." The court drew its phrasing from Professor Gergen's draft. The phrasing doesn't persuade this court that the <u>Indianapolis-Marion County Library</u> court meant to change the rules that apply to cases different from the one before it. The

14

Indiana Supreme Court generally is more forthcoming when it announces a rule of law. Clearer language would illuminate a change from <u>Erie Ins. Co. v. Hickman</u> and the language would be found in a case involving an insurer's bad faith.

This court must apply Indiana law to Count II of Penske's complaint. <u>Erie Ins. Co. v. Hickman</u> states the law of Indiana. The tort for which Penske sues Westfield requires a showing of bad faith, not merely negligence.

<u>Monroe Guar. Ins. Co. v. Magwerks Corp.</u>, 829 N.E.2d 968, teaches that the "general observations" in <u>Erie</u> constitute - at least as of today - a closed set of four ways in which an insurer can tortiously breach its duty of good faith and fair dealing: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." <u>Erie Ins. Co. v. Hickman by Smith</u>, 622 N.E.2d at 519. None of Penske's allegations against Westfield fall into those categories. Westfield's refusal to pay wasn't unfounded: all policy proceeds had been paid out by the time Penske was sued. Penske makes no allegation that payment was delayed (rather than declined altogether) or that it was pressured into a settlement. Of the four methods of actionable bad faith as set forth in <u>Erie Ins. Co. v. Hickman by Smith</u>, that leaves only "deceiving the insured."

Penske says Westfield deceived it (a) by not telling Penske about the negotiations and settlement of the Estates' claims and (b) by telling Penske that

15

its claim under the policy was denied because the policy didn't cover product liability claims. Nothing in the summary judgment record would support a finding that Westfield acted in bad faith, rather than simply negligently, in failing to notify Penske of its discussions and settlement agreement with the Estates. By that point, Penske had verified its coverage under the Westfield policy, but no one had made any claims against Penske. It's hard to see how including Penske in (or excluding Penske from) the settlement talks would make any difference to Westfield, which was likely to pay out its policy limits no matter how many insureds got releases from the Estates. Penske is right that Westfield gave a different reason for its first refusal of its claim for coverage (no coverage for product claims), but Penske asked if that was Westfield's final answer. Westfield promptly replied that it wasn't the final answer, and expeditiously notified Penske that it was denying the claim because the policy proceeds were exhausted. Westfield was wrong at first, but no reasonable jury could find its first denial to have been made in bad faith.

Westfield is entitled to summary judgment on Count II of Penske's complaint.

### C. Count III: Declaratory Judgment

Penske seeks a declaratory judgment in Count III of its complaint. Given the summary judgment rulings on Counts I and II, Penske isn't entitled to a

declaratory judgment.

## IV. CONCLUSION

Accordingly, Westfield's motion for summary judgment [Doc. No. 52] is GRANTED.

SO ORDERED.

ENTERED:   November 16, 2021

___/s/ Robert L. Miller, Jr._____
Judge
United States District Court

17